# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SCANNING TECHNOLOGIES INNOVATIONS, LLC | ) ) | Honorable Susan D. Wigenton |
| Plaintiff, | ) ) | Civil Action No. 2:22-cv-02722-SDW-CLW |
| Versus | ) ) | |
| EVENTDEX, LLC | ) ) | **Motion Date: July 18, 2022** |
| Defendant. | ) ) | |

---

## DEFENDANT EVENTDEX, LLC'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGEMNT ON THE PLEADINGS

---

**BUDZYN IP LAW, LLC**
LUDOMIR A. BUDZYN, ESQ.
120 Eagle Rock Avenue, Ste. 328
East Hanover, NJ 07936
Phone: 973-486-4114
lbudzyn@budzyn-ip.com
*Attorney for Defendant*
*Eventdex, LLC*

## **<u>TABLE OF CONTENTS</u>**

**Page**

I.  OVERVIEW…………………………………………………………….........1

II.  STAGE AND NATURE OF PROCEEDINGS…………………………….……..2

III.  SUMMARY OF THE ARGUMENT…………………………………………..........2

IV.  LEGAL STANDARD…………………………………………………………..3

    A.  Judgment Should be Entered in Favor of Eventdex at the Pleading Stage………………..3

    B.  The Law of 35 U.S.C. §101 ……………………………………………………………4

V.  STATEMENT OF FACTS…………………………..……………………………5

    A.  The '101 Patent………………………………………………………………5

    B.  The Claims of the '101Patent……………………………………………..7

VI.  ARGUMENT……………………………………….……………………..8

    A.  *Alice* Step 1: The '101 Patent is directed to the abstract idea of communicating information about an article of commerce by use of a marking………………………………………………………………9

    B.  *Alice* Step 2: No inventive concept to transform the abstract idea into patent-eligible subject matter is disclosed…………………………………………………….………....12

    C.  The remaining claims are also abstract and contain no "inventive concept."……………………………………………………………………16

VII.  CONCLUSION…………………….……………………………………………17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Directv, LLC,*
838 F.3d 1253 (Fed. Cir. 2016)..................................................................9,13

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
134 S. Ct. 2347 (2014)............................................................... *passim*

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.,*
687 F.3d 1266 (Fed. Cir. 2012)...................................................................4

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC,*
827 F.3d 1341 (Fed. Cir. 2016).................................................................14

*Berkheimer v. HP Inc.,*
881 F.3d 1360 (Fed. Cir. 2018)..........................................................13,15,16

*Bilski v. Kappos,*
561 U.S. 593 (2010)..............................................................................4,5

*BSG Tech LLC v. Buyseasons, Inc.,*
899 F.3d 1281 (Fed. Cir. 2018)...............................................................3,13

*Cellspin Soft, Inc. v. Fitbit, Inc.,*
927 F.3d 1306 (Fed. Cir. 2019)...................................................................5

*ChargePoint, Inc. v. SemaConnect, Inc.,*
920 F.3d 759 (Fed. Cir. 2019)..............................................................11,14

*Coding Techs., LLC v. Miss. Power Co.,*
2020 U.S. Dist. LEXIS 249547, 2020 WL 8410430 ...................................10,15

*Content Extraction & Transmission LLC v. Wells Fargo Bank,*
776 F.3d 1343 (Fed. Cir. 2014)...............................................................5,12

*Diamond v. Chakrabarty,*
447 U.S. 303 (1980)...............................................................................4

*Diamond v. Diehr,*
450 U.S. 175 (1981)...............................................................................4

*Electric Power Group, LLC v. Alstom S.A.,*
830 F.3d 1350 (Fed. Cir. 2016).................................................................2

*Enfish, LLC v. Microsoft Corp.,*
822 F.3d 1327 (Fed. Cir. 2016)………..........................................................10

*Epic IP LLC v. Backblaze, Inc.,*
351 F. Supp. 3d 733 (D. Del. 2018)............................................................12

*Finjan, Inc. v. Blue Coat System, Inc.,*
879 F.3d 1299 (Fed. Cir. 2018).................................................................9

*Fort Props., Inc. v. Am. Master Lease LLC,*
671 F.3d 1317 (Fed. Cir. 2012)..................................................................5

*Global Internet Servs., Inc. v. AT&T Mobility LLC,*
827 F.3d 1341 (Fed. Cir. 2016)………...................................................…....14

*Gottschalk v. Benson,*
409 U.S. 63 (1972)………………………………………………..4

*Intellectual Ventures I LLC v. Capital One Fin. Corp.,*
850 F.3d 1322 (Fed. Cir. 2017).................................................................14

*Internet Patents Corp. v. Active Network, Inc.,*

790 F.3d 1343 (Fed. Cir. 2015)..................................................................11,12
*Liberty Int'l Underwriters Canada v. Scottsdale Ins. Co.*,
955 F. Supp. 2d 317 (D.N.J. 2013) …………………………………………………3
*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
66 F. Supp. 3d 829 (E.D. Tex. 2014)...............................................................12
*Mayer v. Belichick,*
605 F.3d 223 (3d Cir. 2010)…………………………………………………………3
*Mayer Conversion Sys. Corp. v. Am. Airlines, Inc.*,
66 F. Supp. 3d 829 (E.D. Tex. 2014)…………………………………………………12
*Mayo Collaborative Servs. v. Prometheus Labs., Inc*
132 S. Ct. 1289 (2012)...............................................................................5,14
*MyMail, Ltd. v. ooVoo, LLC*
934 F.3d 1373 (Fed. Cir. 2019)...........................................................................4
*Parker v. Flook,*
437 U.S. 584 (1978)........................................................................................5
*Revell v. Port Auth. of N.Y. & N.J.*,
598 F.3d 128 (3d Cir. 2010)…………………………………………………………3
*Rothschild Digital Confirmation, LLC v. CompanyCam, Inc.*,
494 F. Supp. 3d 263 (D. Del. 2020)...............................................................1,2
*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)...........................................................................9
*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017)....................................................................*passim*
*In re TLI, Commc'ns LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016)...............................................................11,13,14
*Ultramercial, Inc. v. Hulu,*
LLC, 772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)................................4,12,16

**Statutes**
35 U.S.C. § 101...................................................................................... *passim*

**Other Authorities**
FED. R. CIV. P. 12(c)...........................................................................…….*passim*

**I.      OVERVIEW**

Plaintiff Scanning Technologies ("Plaintiff") is an established and notorious non-practicing entity, and its principal (and sole inventor of the the '101 Patent) has a long history of filing serial litigation but then dismissing cases when met with resistance, before any decisions can be rendered on the merits. Since January 1, 2020, Plaintiff has filed almost forty cases in a wide variety of federal jurisdictions, all of which assert either the patent at issue here, U.S. Patent No. 10,600,101 ("the '101 Patent"), or U.S. Patent. No. 9,934,528 (the "'528 Patent"). Both the '101 and the '528 patents are continuations of (and claim priority to) U.S. patent application Ser. No. 13/405,246 filed on Feb. 25, 2012, now U.S. Pat. No. 8,469,270. Plaintiff has repeatedly agreed to dismiss cases with prejudice after a 35 U.S.C. § 101 motion was filed, but before such motion could be heard. *See*, *e.g.*, *Scanning Technologies LLC v. Linga, LLC*, 2-20-cv-00429 (M.D. Fl.), *Scanning Technologies v. Eposnow, LLC*, 6-20-cv-00990 (M.D. Fl.), *Scanning Technologies v. Night Out, Inc*. 2-21-cv-02620 (C.D. Cal.), *Scanning Technologies v. Finale, Inc.*, 5-21-cv-03119 (N.D. Cal.), *Scanning Technologies v. EZ Web Enterprises, Inc*, 6:21-cv-00492-ADA (W.D. Tex.), *Scanning Technologies Innovations, LLC v. Thunder Data Systems, Inc.* (6:21-cv-00448-ADA). Plaintiff's repeated lawsuits, coupled with its decisions to dismiss such suits in view of a 35 U.S.C. § 101 motion, make this one of the rare cases where it is appropriate to resolve Section 101 eligibility of the patent-in-suit in a Rule 12(c) motion for judgment on the pleadings.

Indeed, in a similar case concerning a patent by the same inventor, Leigh Rothschild, the court found the case exceptional in part due to the plaintiff's "vexatious litigation." *Rothschild Digital Confirmation, LLC v. CompanyCam, Inc.*, 494 F.Supp.3d 263, 267 (D. Del. 2020). In *Rothschild*, the plaintiff filed eleven cases asserting infringement of the patent-in-suit in the span of two years. *Id*. at 264. Defendant CompanyCam moved to dismiss the case on patent eligibility grounds, and the court stated it would grant the motion during the oral argument of the motion. *Id*. The plaintiff then dismissed the case before the Court's order was entered and prolonged litigation against defendants in other cases. *Id*. at 268. The District of Delaware described the plaintiff's litigation conduct as "troubling" and deemed the case exceptional in view of the totality of circumstances and awarded attorneys' fees to the defendant. *Id*. at 267-269. The Court also expressed concern about the plaintiff's principal's conduct, noting that Mr. Rothschild had filed 820 lawsuits (a number which is certainly even higher now in June 2022) without reaching the merits in any of them. *Id*. at 266. Plaintiff has demonstrated similar litigation conduct here, and

1

without an early look at the merits, they may continue their vexatious litigation without risking a decision on the merits.

## II.    STAGE AND NATURE OF PROCEEDINGS

Without any prior contact or notice, on May 10, 2022, Plaintiff filed this lawsuit accusing Eventdex, LLC ("Defendant") of infringing the '101 Patent, entitled "Systems and Methods for Indicating the Existence of Accessible Information Pertaining to Articles of Commerce." Plaintiff accuses Defendant's "Event management application, any associated hardware, and software, and any similar products" of infringing at least Claim 1 of the '101 Patent. (Complaint, ¶14, ECF 1).

On or around June 7, 2022, a copy of the Complaint and Summons were delivered to the home residence of one of Defendant's principals. It is noted that as of June 24, 2022, Plaintiff has failed to file proof of service. New Jersey law requires that "proof of service of all papers required or permitted to be served shall be filed in the Clerk's office ***promptly*** and in any event before action is taken thereon by the Court or the parties." L. Civ. R. 5.1.(b). (emphasis added). Plaintiff's failure to provide timely proof of service skirts this rule and is consistent with its above-outlined strategy of "vexatious litigation" prior to voluntary dismissal before risking disposition of the case on its merits.

At this point, Defendant has been unable to fully confirm the conditions around the delivery of the Complaint and the Summons, particularly as to whether such delivery constituted proper service. Nonetheless, in view of the nuisance nature of this lawsuit, and to avoid Plaintiff taking advantage of late-filing proof of service, Defendant is proceeding with this Motion.

## III.    SUMMARY OF THE ARGUMENT

Defendant moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(c). The claims of the '101 Patent are invalid on the face of the patent  because they are directed to patent-ineligible subject matter under 35 U.S.C. § 101. The claims recite the mere notion of using generic computer components to achieve the abstract idea of communicating information about an article of commerce by use of a marking. Indeed, the claims at issue here "fall into a familiar class of claims 'directed to' a patent-ineligible concept." *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). Much like the barcode and QR claims at issue in *Secured Mail*, the claims at issue here "merely provide that an

identifier is affixed to [an article of commerce] that is used by the recipient to request and display electronic information." *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 910 (Fed. Cir. 2017).

Moreover, the recited components, "a mobile device" comprising a "signal processing device" and a "visual input device," and "a server," do not amount to any technical improvement in the functioning of the system or any components. Rather, these components are used only as tools to implement the abstract idea of communicating information about an article of commerce by use of a barcode, a form of a marking. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018) ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."). The claims of the '101 Patent thus lack an inventive concept.

Resolving this issue does not require discovery or formal claim construction. The '101 Patent does no more than disclose an abstract idea using conventional and well-known components. Therefore, the claims of the patent are invalid under § 101 for failure to claim patent eligible subject matter. To avoid waste of judicial and party resources unnecessarily litigating an invalid patent, Defendant thus respectfully requests that the Court grant Defendant's Motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## IV.   LEGAL STANDARD

### A.  Judgment Should be Entered in Favor of Defendant at the Pleading Stage

A party may move for judgment on the pleadings after "the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings, a court can consider the "complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon those documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). A court may also consider facts it has judicially noticed. *Liberty Int'l Underwriters Canada v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 324-25 (D.N.J. 2013). A motion for judgment on the pleadings is "analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Id.* (quoting *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)). A court must grant that motion if the "movant clearly

establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent that the asserted claims are plainly understood and not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101."). *See also MyMail, Ltd. v. ooVoo*, LLC, 934 F.3d 1373, 1378 (Fed. Cir. 2019) ("Patent eligibility under §101 is a question of law that may involve underlying questions of fact… Patent eligibility may be determined on a Rule 12(c) motion, but only when there are no factual allegations that, if taken as true, prevent resolving the eligibility question as a matter of law.")

### B. The Law of 35 U.S.C. § 101

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. The law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and **abstract ideas**." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). Abstract ideas are ineligible for protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id*. at 653 (*quoting Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id*. (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id*. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc*., 132 S. Ct. 1289, 1294 (2012)). Furthermore, the use of generic hardware or computer technology to perform "well-understood, routine, and conventional activities commonly used in industry," does not make a claim patent eligible. *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity— such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978).

Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope."). Although factual allegations are generally presumed true in the context of a Rule 12(c) inquiry, any such allegations concerning the inventive nature of the claims cannot be "wholly divorced from the claims or the specification." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019).

## V.  STATEMENT OF THE FACTS

### A.  The '101 Patent

The '101 Patent was filed on April 3, 2018, and issued on March 24, 2020, with Plaintiff being the assignee of all rights in the '101 Patent. As owner of the '101 Patent, the Plaintiff is also referenced herein to as "Patentee." The '101 Patent is entitled "[s]ystems and methods for indicating the existence of accessible information pertaining to articles of commerce," and is directed to "systems and methods for enabling a mobile device to indicate the existence of accessible information about an identified article of commerce." '101 Patent at 1:28-30.

In the '101 Patent, Patentee acknowledged that numerous technologies existed at the time of their application. *Id*. For example, Patentee acknowledged that "[p]ortable digital devices are now common." *Id*. at 1:34. The applicant further acknowledged that "[v]arious communications technologies are frequently built into these devices" and "mobile devices may employ an

incorporated imaging device to scan Universal Product Codes (UPCs) or other symbologies disposed on articles of commerce to receive more information on such articles." *Id*. at 1:48, 1:59-62. The problem identified by Patentee was that "devices take time to connect to the internet (if internet service is even available) and then the user still may or may not have information on the article of commerce." *Id*. at 1:64–1:66. Patentee contended that the delay and lack of information led to user frustration. *Id*. at 1:66- 2:2. Patentee thus proposed a solution whereby a user may be notified of the existence of a link to information of an article of commerce. *Id*. at 2:17–19.

But the Patentee described his "solution" only with generic components and only at a high-level of generality. For example, Claim 1 of the '101 Patent is directed to a "system for indicating an existence of a link" with the system consisting of only three tangible components: (1) a mobile device; (2) digital files; and (3) a server. *Id*. at Cl. 1. Claim 1 further requires that the server "store a look-up table that includes at least a plurality of bar codes associated with a plurality of articles of commerce," and that the claimed mobile device include: (1) a signal processing device (i.e., a standard computer processing module (6:14-28)); and (2) a visual input device (i.e., a camera (7:27-29)). *Id*. Neither the claims nor the specification disclose any special algorithms or programming.

The specification states that Figure 3, below, depicts "a system in accordance with the present disclosure." *Id*. at 8:62–63. *Id*., Fig. 3.



FIG. 3

6

In Fig. 3, mobile device 100 is associated with database 110. *Id*. at 8:63-65. Database 110 may be stored in the internal memory of mobile device 100 (e.g., storage module 110) or external memory communicably coupled to mobile device 100. *Id*. The mobile device 100 communicates with a server 304 via communication network 302 via any form of communication and protocol means. *Id*. at 9:5–23. Server 304 stores look-up tables in storage medium 306. *Id*. at 9:23-24. This entire configuration is notoriously well-known, representing a mobile device linked to a cloud server via a standard telecommunications network.

The look-up tables provided on server 304 store information such as Universal Product Codes (UPCs) and information links. *Id*. at 9:23–25. Also depicted is product 310 comprising barcode 312 which may be scanned by mobile device 100. The mobile device 100 downloads at least one look-up table from storage 306 to database 110 via communication medium 308. Mobile device 100 may then be used to scan barcode 312. Upon scanning barcode 312, mobile device 100 may look up product 310 in database 110 (which contains the look-up table downloaded from storage 306). The mobile device may then learn of the existence of a link to more information regarding product 310. In all, the '101 Patent is directed to communicating information (existence of a link to more information) about an article of commerce by a barcode, which can be scanned by a mobile device to communicate the information.

## B. The Claims of the '101 Patent

Plaintiff only specifically asserted Claim 1 of the '101 Patent in the Complaint. (Complaint, ¶14, ECF 1). For reference, Claim 1 of the '101 Patent reads as:

> A system for indicating an existence of a link to information pertaining to an article of commerce, the system comprising:
>
> a mobile device comprising a portable handheld housing and a communication interface configured to enable the mobile device to communicate with a communication network, the mobile device further comprising a signal processing device and a visual input device, the visual input device affixed within the portable handheld housing;
>
> digital files associated with the mobile device,
>
> a server in communication with the communication network, the server comprising a server database configured to store a look-up table that includes at least a plurality of bar codes associated with a plurality of articles of commerce, the look-up table also storing a plurality of information link indicators, each information link indicator associated with a respective bar code and article of

commerce, and each information link indicator being configured as a status signal indicating the existence or absence of a link to information pertaining to a respective article of commerce, the link being made to the information via the communication network;

wherein the visual input device is configured to scan an image of an article of commerce, decode the image to obtain a bar code and forward data from the scanned image to the signal processing device;

wherein, in response to receiving the bar code, the signal processing device is configured to look up the bar code in the look-up table to determine from a respective information link indicator whether or not a link exists for accessing information pertaining to an article of commerce associated with the bar code via the communication network.

'101 Patent at 11:47-12:14.

The '101 Patent includes twenty-one total claims with four of the claims being independent, namely Claims 1, 7, 12, and 17. Claim 1 is a system claim as described above. Claim 7 is a method claim which tracks Claim 1, but in method form. Claim 12 is directed to a mobile device used in the system of Claim 1. Claim 17 is directed to a computer readable medium (CRM) which provides computer instructions for performing the method of Claim 7. With all the claims being highly related, Claim 1 is taken to be representative of all of the claims of the '101 Patent as is the focus of the following discussion.

## VI.   ARGUMENT

The claims of the '101 Patent are invalid under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test. Each of the claims is directed to the abstract idea of communicating information about an article of commerce by use of a marking. Abstract ideas are not eligible for patenting. None of the claims contains an "inventive concept sufficient to ensure that the patent in practice amounts to **significantly more** than a patent upon the ineligible concept itself." See *Alice*, 134 S. Ct. at 2355 (emphasis added). The '101 Patent is plainly invalid, and there are no factual allegations that Plaintiff can present to overcome the obvious deficiencies in the specification and claims of the '101 Patent. Because the '101 Patent is clearly invalid, Defendant respectfully requests that the Court grant this Motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure Fed. R. Civ. P. 12(c).

### A. *Alice* Step 1: The '101 Patent is directed to the abstract idea of communicating information about an article of commerce by use of a marking

Claim 1 is directed to the abstract idea of communicating information about an article of commerce by use of a marking. Assessing whether Claim 1 is directed to an abstract idea, begins by analyzing the "focus" of the claim, i.e., its "character as a whole," in order to determine whether the claim is directed to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). It is necessary to examine a patent's "'claimed advance' to determine whether the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat System, Inc*., 879 F.3d 1299, 1303 (Fed. Cir. 2018). A court should strip away "excess verbiage" in order to determine what the claim is directed to. *Affinity Labs of Tex., LLC v. Directv, LLC*, 838 F.3d 1253, 1256 (Fed. Cir. 2016).

Here, the '101 Patent is directed to communicating information about an article of commerce by use of a marking. '101 Patent, Cl. 1. Put simply, the applicant claimed the use of conventional technology to provide information to a consumer as to whether more information about a product is available. The idea of determining whether more information related to an article of commerce exists is a fundamental practice that can be carried out manually. In essence, the patent claims the fundamental activity of asking a salesperson for information. Take, for example, a customer who goes to a store to purchase a camera. The customer may see a camera on display. However, the customer does not know whether the camera is in stock, or whether it has all the functions the customer desires. The customer may then ask a salesperson for additional information. The salesperson may look at the displayed item, and respond that he or she can look up the information for the customer. Alternatively, the salesperson may be unaware of any further information, and may inform the customer accordingly. This captures the fundamental concept of Claim 1 of the '101 Patent.

The Federal Circuit's decision in *Secured Mail* is highly instructive. In *Secured Mail*, the Federal Circuit held claims directed to "communicating information about a [mail object] by use of a marking" to be abstract. *Secured Mail*, 873 F.3d at 909. The claims at issue in *Secured Mail* involved using QR codes on mail packaging to obtain information related to the mailing. *Id*. at 908. This is similar to Claim 1 of the '101 Patent in which a barcode is used to retrieve information. '101 Patent, Cl. 1, 7:50–64. In *Secured Mail*, the court held that the claims were "not limited to any particular technology of generating, printing, or scanning a barcode." *Secured Mail*, 873 F.3d

at 911. Thus, "each step of the process is directed to the abstract process of communicating information about a mail object using a personalized marking" *Id*. In a similar manner, Claim 1is simply directed to using a scanning device to scan a marking and retrieve information related to a product.'101 Patent, Cl. 1. The claims are not limited in any meaningful way to any particular technology.

The *Secured Mail* court also reviewed *Enfish*, a seminal case supporting patent subject matter eligibility. *Secured Mail*, 873 F.3d at 910, *discussing Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). Specifically, the court differentiated *Secured Mail* from *Enfish* by noting that the claims at issue in *Enfish* were directed to an improvement in computer functionality, while the claims in *Secured Mail* were not, stating that the claims were "not directed to a new barcode format, an improved method of generating or scanning barcodes, or similar improvements in computer functionality." *Id*. This statement fully applies to Claim 1 of the '101 Patent: there is no new barcode format, no improved method of generating or scanning barcodes, or an improvement in computing function.

Similar barcode related claims have been found patent ineligible. In *Coding Techs., LLC v. Miss. Power Co.,* the court analyzed claims directed to "using a barcode on a mobile device to facilitate bill payment." *Coding Techs., LLC v. Miss. Power Co.*, 2020 U.S. Dist. LEXIS 249547, *8, 2020 WL 8410430. The court specifically found that the claims were "in all relevant respects similar to the barcode-related patents found to embrace an abstract idea as in *Secured Mail*." *Id*. at *11. Hence, the court found that the claims, which "recite a method whereby a billing transaction is facilitated by virtue of user and billing information encoded in a barcode," to be directed to an abstract idea, as "the claims do not set forth any particular method [by which] the barcode is to be generated or scanned, or any method of improving the speed, efficiency, or accuracy of barcode functionality." *Id*. The court also found that the claims did not improve computer functionality. *Id*. Claim 1 of the '101 Patent is similar to the ones in *Coding Tech* in that it is directed to communicating information about an article of commerce by use of a barcode. Additionally, Claim 1 uses conventional components and is not directed to an improvement in computer functionality. *See generally* '101 Patent, Cl. 1. Thus, Claim 1 of the '101 Patent is also directed to an abstract idea.

The claim language confirms that representative Claim 1 is directed to the abstract idea of communicating information about an article of commerce by use of a marking. The claim recites

generic hardware including "a mobile device" (having a computer and a camera) "a visual input device," and "a server." '101 Patent, Cl. 1. Nothing in the claim language is concerned with improving the functioning of any of the hardware from a technical standpoint, which is why the claimed components are described "in vague terms without any meaningful limitations." *In re TLI, Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612–13 (Fed. Cir. 2016) ("the focus of the patentee and of the claims was not" on improved hardware because the specification described the functionality of the hardware "in vague terms without any meaningful limitations").

The Federal Circuit's decision in *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019) is also instructive. The *ChargePoint* claims were directed to a communication network to facilitate finding a recharging facility, controlling the facility, and paying for the electricity consumed. *Id.* at 766. But the claim described this process only in high-level functional terms, such as "a control device to turn electric supply on and off" and "a transceiver to communicate requests." *Id.* The specification never even suggested that the charging station itself would operate differently or that it was "improved from a technical standpoint." *Id.* at 768. The Federal Circuit therefore concluded that the risk of overly broad coverage was high because the broad claim language "would cover any mechanism for implementing network communication on a charging station." *Id.* at 770. It further noted that, "[e]ven if ChargePoint's specification had provided, for example, a technical explanation of how to enable communication over a network for device interaction (which, as discussed above, it did not), the claim language here would not require those details." *Id.* at 769–70.

Like the claims in *ChargePoint*, the Patentee of the '101 Patent failed to disclose the details of how to implement his system for determining the existence of more information related to an article of commerce. Instead, the Patentee described the system only at a high level of generality. For example, the mobile device of Claim 1has a "communication interface" which allows it to communicate with a server and look up information.'101 Patent, Cl. 1. Claim 1 also discloses a "server" which stores a look-up table. *Id.*, 9:59–64. But nothing in Claim 1 explains how the mobile device must be programmed to download the look-up table from the server. Moreover, nothing suggests that the mobile device or any other component is "improved from a technical standpoint." *See ChargePoint*, 920 F.3d at 768. In other words, the broad claim language covers only the envisioned resulting system but not how to achieve it. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (concluding that claim not directed to patent-

eligible subject matter where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation.").

By only claiming the desired result— communicating information about an article of commerce by use of a marking —without describing any specific roadmap for doing so, Claim 1 of the '101 Patent falls short of claiming eligible subject matter under § 101. *See Internet Patents*, 790 F.3d at 1348. Indeed, the claim risks preempting all methods or systems for communicating information about an article of commerce by use of a marking. *See, e.g., Mayer Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 843 (E.D. Tex. 2014) (finding "preemptive effect . . . broad" where "the claims [were] largely functional in nature, they [did] not provide any significant description of the particular means by which the various recited functions are performed," and "[a]ll that [was] disclosed [was] the ultimate objective"). The law is clear that claims that "recite the concept, but not the way to implement it," are ineligible for patenting. *fin LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 740 (D. Del. 2018). Such is the situation with Claim 1 of the '101 Patent.

Claim 1 thus fails *Alice* step one because it is directed to a patent-ineligible abstract idea. *Alice,* 134 S. Ct. at 2355. Claim 1 of the '101 Patent is representative of all the claims because all the claims are "substantially similar and linked to the same abstract idea." *See Content Extraction* 776 F.3d at 1348 (holding that district court's analysis of representative claims was appropriate where claims were "substantially similar and linked to the same abstract idea"). Accordingly, all of the claims of the '101 Patent are directed to an abstract idea.

**B.** *Alice* **Step 2: No inventive concept to transform the abstract idea into patent-eligible subject matter is disclosed**

Because Claim 1 of the '101 Patent is directed to an abstract idea, the Court must next determine whether it contains an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, Claim 1 "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted). Here, Claim 1 is broadly generic and does not contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea. Patentee acknowledged that "[p]ortable digital devices are now common." '101 Patent at 1:34. Patentee further acknowledged that "[v]arious

12

communications technologies are frequently built into these devices" and "mobile devices may employ an incorporated imaging device to scan Universal Product Codes (UPCs) or other symbologies disposed on articles of commerce to receive more information on such articles." *Id*. at 1:48, 1:59–62. The problem identified by the Patentee was that "devices take time to connect to the Internet (if Internet service is even available) and then the user still may or may not have information on the article of commerce." *Id*. at 1:64–66. The Patentee contended that the delay and lack of information leads to user frustration. *Id*. at 1:66–2:2. The applicant thus proposed a solution whereby a user may be notified of the existence of a link to information of an article of commerce. *Id*. at 2:17–19.

The solution is claimed and implemented via the conventional application of generic means. There is no unconventional feature or activity disclosed in Claim 1 of the '101 Patent. This is especially true given that no special programming or improved component is claimed. All that is disclosed to perform the functionality of retrieving information as to the existence of further information of an article of commerce is a "mobile device" having a generic "visual input device" and "signal processing device" (a computer), a "server" that hosts a "look-up table," and "digital files," where the mobile devices uses the visual input device to scan a barcode and retrieve the relevant information from the look-up table. *Id*., Cl. 1.

However, Claim 1 is altogether devoid of any technical explanation, beyond the use of conventional technology, as to how to implement the purported invention. *See In re TLI*, 823 F.3d at 615 (claims failed *Alice's* step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). "At *Alice* step two, it is [thus] irrelevant whether [communicating information about an article of commerce by use of a marking] may have been non-routine or unconventional as a factual matter." *BSG Tech*, 899 F.3d at 1290–91 ("As a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it."); see also *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1370 (Fed. Cir. 2018) (claims lacked an inventive concept because they "amount to no more than performing the abstract idea of parsing and comparing data with conventional computer components"); *Affinity Labs of Tex.*, 838 F.3d 1262 (claim lacked an inventive concept because it "simply recites the use of generic features . . . as well as routine functions . . . to implement the underlying idea"). Adding generic functionality

13

to an existing mobile device does not amount to an inventive concept as a matter of law. *See Alice*, 134 S. Ct. at 2359-60.

Claim 1 fares no better when its limitations are viewed in combination. The Patentee did not describe how the claimed system "is a technical improvement over prior art." *See Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (emphasis added). The Patentee sought only to reduce user frustration with finding information related to an article of commerce. '101 Patent, 1:66–2:6. They did so by storing a look-up table that can be accessed locally and thus reduce user frustration because, purportedly, the user would at least know whether further information exists. *See Id*. This merely adds generic database functionality to the mobile device. *See ChargePoint*, 920 F.3d 759, 774-75 (rejecting plaintiff's reliance on *Bascom* because the claims "do not improve the technology" but instead "merely add generic networking capabilities to [the claimed components] and say 'apply it'"). Considering the limitations in combination "add[s] nothing . . . that is not already present when the [limitations] are considered separately." *Alice*, 134 S.Ct. at 2359 (internal brackets and quotation marks omitted). There is nothing "inventive" about using a mobile device and adding generic database functionality.

Claim 1 is devoid of any technical explanation as to how to implement the invention and thus provides no inventive concept. *See In re TLI*, 823 F.3d at 615 (claims failed *Alice's* step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention").

And the '101 Patent's use of terms such as "barcodes" and "information link indicators" to describe computer components that were known in the art is not enough to confer patentability. *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1322, 1341 (Fed. Cir. 2017) ("In particular, the MRTs and PRTs—**although technical sounding**—include generic data types for which the system can store the extracted data.") (emphasis added). Indeed, the Supreme Court has long "warn[ed] . . . against interpreting § 101 'in ways that make patent eligibility depend simply on the draftsman's art.'" *Alice*, 134 S. Ct. at 2360 (quoting *Mayo*, 132 S. Ct., at 1294). Barcodes were known in the art. '101 Patent at 7:61–64; see also *Secured Mail*, 873 F.3d at 912("**[t]he use of barcodes was commonplace and conventional in 2001**") (emphasis added).).

14

The information link indicator may simply be a "status or check signal," neither of which would be unknown to those in the art. *Id*. at 4:4-19.

Here again, the *Coding Techs* case is instructive. There, the court analyzed the similar barcode related patent claims under the second step of *Alice* and found that they did not disclose an inventive concept. See also *Coding Techs*., 2020 U.S. Dist. LEXIS 249547, at **14-19. The court specifically noted that "[t]he use of barcodes was commonplace and conventional" as early as 2001, as was the concept of a barcode-encoded URL." Id. at *16 (citing *Secured Mail*, 873 F.3d at 912). The court also found that the claims were silent "as to the means by which [the] computing tasks are to be performed" and merely disclosed a "generic computer" performing "generic computer tasks." *Id*. at **17-19. Thus, the court concluded that the patent-in-suit did not "present an inventive concept sufficient to render the abstract idea of using barcodes to facilitate bill payment patentable." *Id*. at *20. Similarly here, Claim 1 of the '101 Patent is directed to conventional barcode technology and recites only generic computer tasks performed by generic computing devices/components (e.g. "mobile device," "server," "visual input device") or generic computer software (e.g "digital files," "look-up table"). '101 Patent, Cl. 1. Thus, Claim 1 of the '101 patent fails to disclose an inventive concept.

Unlike in *Berkheimer*, this case does not present any factual disputes requiring resolution before the Court can decide this § 101 issue. In *Berkheimer*, the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer*, 881 F.3d at 1369. The Federal Circuit then examined whether the improvements described in the specification were included in the claims. For those claims where the inventive feature in the specification was "captured in the claims," the Federal Circuit found a "factual dispute regarding whether the invention describe[d] well-understood, routine, and conventional activities." *Id*. But where the claims did not recite the purportedly inventive features described in the specification, the Federal Circuit concluded that they were directed to patent ineligible subject matter under § 101. *Id*. Here, in contrast, there is no need for fact discovery at all because neither Claim 1 nor the specification of the '101 Patent describes any unconventional components or the use of generic components in some unconventional manner, and no amount of fact discovery can change that.

As discussed above, the purported advance of Plaintiff's claims is the idea of communicating information about an article of commerce by use of a marking. '101 Patent at 2:17-

19. But Claim 1 of the '101 Patent does not describe any particular mechanism, beyond conventional processing, for achieving the result. *See Secured Mail*., 873 F.3d at 912 (claims fail *Alice* step two where "[t]he claim language does not provide any specific showing of what is inventive about the [limitation in question] or about the technology used to generate and process it"). The recited limitations—whether considered individually or as an ordered combination—are insufficient to add "significantly more" to the abstract idea. Because it is altogether devoid of any "inventive concept," Claim 1 of the '101 Patent is thus patent-ineligible under § 101. See *Alice*, 134 S. Ct. at 2359–60.

C. **The remaining claims are also abstract and contain no "inventive concept."**

As discussed above, the remaining claims of the '101 Patent outside of Claim 1 recite the same abstract idea: communicating information about an article of commerce by use of a marking. Indeed, the remaining independent claims of the '101 Patent are substantially similar to Claim 1. Because these independent claims cannot be meaningfully distinguished from Claim 1 of the '101 Patent, they are ineligible for the same reasons. The dependent claims fare no better. The only differences relate to token or insignificant pre- or post-solution activity— for example, displaying the information retrieved (Claims 2, 8, 13, and 18), producing audio alerts (Claims 3, 9, 14, and 19), updating (Claims 5, 10, and 20), and linking (Claims 4, 11, 15, and 21). *See Ultramercial*, 722 F.3d at 1346 ("claim . . . will not be limited meaningfully if it contains only insignificant or token pre or post-solution activity—such as identifying a relevant audience, a category of use, field of use, or technological environment"). Indeed, all the dependent claims are written in the same or similar high-level of generality as in Claim 1 of the '101 Patent.

None of these limitations is sufficient to raise the claims beyond the abstract idea to which they are directed. Like Claim 1 of the '101 Patent, the limitations in the remaining claims are directed to the same abstract idea of communicating information about an article of commerce by use of a marking and are altogether devoid of any "inventive concept." They are thus equally patent ineligible under § 101. See *Alice*, 134 S. Ct. at 2359-60; see also *Berkheimer*, 881 F.3d at 1365 ("Courts may treat a claim as representative where there is no 'meaningful argument for the distinctive significance of any claim limitations not found in the representative claim'").

16

## VII.     CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court grant Defendant Defendant's Motion for Judgment on the Pleadings.


Dated: June 24, 2022                **BUDZYN IP LAW, LLC**

By: /s/ Ludomir A. Budzyn
        LUDOMIR A. BUDZYN, ESQ.
        120 Eagle Rock Avenue, Ste. 328
        East Hanover, NJ 07936
        Phone: 973-486-4114
        lbudzyn@budzyn-ip.com
        *Attorney for Defendant*
        *Eventdex, LLC*